Argued October 5, affirmed November 9, rehearing denied December 21, 1920.

## ADAMS v. KING.

(193 Pac. 196.)

**Animals—Evidence Held to Show Negligent Feeding.**

1. Evidence *held* to support a finding that defendant was negligent in performing his agreement to hand feed cattle.

**Appeal and Error—Findings on Conflicting Evidence not Disturbed.**

2. If there was any substantial evidence upon which to base the findings and judgment of the trial court, the Supreme Court will affirm the judgment, for it is not within its province to decide a controverted question of fact decided by trial court on conflicting testimony.

From Multnomah: ROBERT G. MORROW, Judge.

Department 1.

Ivan King owned a farm on Sauvies Island. The farm embraced about 510 acres. C. G. Adams owned forty-two head of cattle, of which three were calves, and most, if not all, of the remainder were cows. King agreed to "pasture and hand feed" the cattle

from November 1, 1917, to May 1, 1918. Adams agreed to pay $1 "per head for said cattle while on pasture," and $1.50 "per head while being hand fed hay." Adams agreed to furnish the hay and to deliver it at King's landing.

The cattle were driven to King's farm on or about November 1, 1917. On about May 1, 1918, King returned to Adams only thirty-two head of the cattle, nine cows and one calf having died between November 1, 1917, and May 1, 1918.

Adams sued King for the value of the cattle that died, alleging that their loss was caused by King's negligence in not properly looking after the cattle and in not properly feeding them.

The parties consenting, the cause was tried to the court without the aid of a jury. The trial court found that the "defendant did not give to said cattle the reasonable and usual care given by persons engaged in the same line and occupation of pasturing and feeding cattle," and that the "cattle were lost through the negligence of defendant." The trial court also found as a fact that—

"The plaintiff in accordance with the requirements of said agreement upon him resting duly supplied sufficient and an abundance of hay to be fed to said cattle and delivered same at the landing of the defendant where said hay was received by the defendant."

There was a judgment for the plaintiff, and the defendant appealed.                                          AFFIRMED.

For appellant there was a brief over the names of *Mr. George Estes* and *Mr. J. H. Hobart,* with an oral argument by *Mr. Estes.*

For respondent there was a brief and an oral argument by *Mr. D. Solis Cohen.*

HARRIS, J.—The only complaint now made by the defendant is that there was no evidence to support the judgment. The agreement was ''to pasture and hand feed,'' and, although there was no express provision in the agreement stating when the cattle were to be hand fed, yet it was assumed by the parties that the obligation to hand feed did not arise until the arrival of such time as a reasonably prudent man would, because of the lack of grass, have resorted to hand feeding. The cause was prosecuted by the plaintiff and decided by the court on the theory that the defendant was negligent in not properly performing his obligation to hand feed the cattle.

1, 2. We cannot agree with the contention of the defendant, so ably argued by his attorney, that there is no evidence in the record to support the finding that the defendant was negligent in respect of his agreement to hand feed the cattle. If there was any substantial evidence upon which to base the findings and judgment of the trial court, then we are obliged to affirm the judgment, for it is not within our province to decide a controverted question of fact which has already been decided by the trial court upon conflicting testimony.

There is evidence in behalf of the plaintiff to the effect that the cattle ''were in good condition to go into the winter.'' There is evidence from which the plaintiff argues that when the cattle were taken to the King farm they were placed on pasture lands and kept there for a few weeks, and that at the end of that time a portion of the cattle ''were brought in,'' and that later on the remainder of the cattle were brought to the feeding barn. According to Adams, the cattle which were last brought to the feeding barn were ''in a horrible weak condition.'' Mrs.

Ellen Dunn, who resided on land adjoining one end of the King premises, saw the cattle before they were taken to the feeding barn, and she says that she "noticed there wasn't any pasture," and that the cattle were neglected, and that for several days her husband carried feed from their place and gave it to the weaker cows. Mrs. Dunn's testimony was corroborated by Jacob C. Clark; and, indeed, the condition of the cattle was such as to cause Clark to complain to "some of them" that "it was a shame to see cattle in the condition they were." The defendant argued that there is no evidence to indicate that the cattle, of which Mrs. Dunn and Jacob C. Clark spoke, were the Adams cattle. The evidence indicates that there were no cattle on the King premises except the Adams cattle and cattle owned by King. The evidence shows clearly, including the testimony of defendant himself, that the Adams cattle, when pastured and before "brought in," were pastured on that part of the King premises which adjoins the Dunn farm, while the King cattle were kept at the other end of the King premises, or about a mile from the place where the Adams cattle were pastured. The defendant when a witness did not claim that any of the cattle were infected with disease or that any of them died from any disease. The King cattle were kept and fed separately from the Adams cattle. It is admitted that none of the King cattle died.

In addition to evidence tending to show that the defendant was negligent in leaving the cattle on the pasture too long and in not sooner hand feeding them, there is evidence from which the plaintiff contends that the cattle were not properly fed. There was evidence to the effect that the hay-racks were so arranged that the cattle could not get to them with

the result that the "boss cattle" "whipped out" the weaker ones and prevented them from getting any of the hay. Again, there was evidence that the hay was put in only a portion of the racks and not scattered along the full length of them. In brief, there was substantial evidence to support the charge made by the plaintiff that the defendant did not use ordinary care in caring for and feeding the cattle. There was also, it is true, substantial evidence tending to controvert the charge made by the plaintiff, and tending to support the position taken by the defendant that he had used proper care in looking after and feeding the cattle.

We have then before us a record, which shows that there was substantial evidence in behalf of the plaintiff and also substantial evidence for the defendant, with the result that there is a conflict in the evidence; and, therefore, since the only question presented upon this appeal is whether or not there was sufficient evidence to sustain the judgment, the findings made by the trial judge are conclusive upon us, and the judgment appealed from must be affirmed.

AFFIRMED.   REHEARING DENIED.

McBRIDE, C. J., and BURNETT and JOHNS, JJ., concur.